# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Parentage of: | No. 60301-2-II |
| L.R.A. | |
| MATTHEW AMOROSO, | UNPUBLISHED OPINION |
| Respondent, | |
| and | |
| BRIANNA JOHNSON, | |
| Appellant. | |

CHE, J. — Brianna Johnson appeals a final parenting plan concerning her and Matthew Amoroso's child in common.

Johnson asked the trial court to impose mandatory limitations on Amoroso based on evidence of a history of domestic violence. At trial, undisputed evidence included a neglect finding by Child Protective Services (CPS) and past violent and threatening behavior toward Amoroso's family members. Unchallenged facts established that Amoroso had long-term impairment due to substance abuse that had completely remediated through treatment. The trial court ultimately made no domestic violence limitation finding for Amoroso and did not impose any residential time limitation on Amoroso.

Amoroso called Johnson to testify as a witness in his case in chief. In Johnson's case in chief, she sought to call herself and made an offer of proof for her anticipated testimony and exhibits. The trial court accepted or admitted each without allowing Johnson to testify. Johnson did not object to this process.

Johnson argues that the trial court (1) abused its discretion and violated Johnson's due process rights by preventing her from testifying in her case in chief and (2) abused its discretion in failing to find that Amoroso had a limiting factor of a history of domestic violence. Amoroso seeks attorney fees on appeal.

Despite the trial court's inappropriate procedure at trial, we decline to reach Johnson's due process argument because she fails to establish actual prejudice under RAP 2.5(a). Additionally, we hold that, although substantial evidence supported a finding that Amoroso had a history of domestic violence, the trial court did not err in declining to impose a residential time limitation on Amoroso. Moreover, we decline to grant Amoroso's request for attorney fees. We affirm.

FACTS

In November 2019, Johnson and Amoroso had a child in common, LA. A couple months before the child's first birthday, Amoroso and his wife obtained a protection order that restrained Johnson from coming near, contacting, or taking other actions against Amoroso, his wife, and their minor children—not shared with Johnson—for one year. Days later, Amoroso petitioned the trial court to establish LA's parentage and to enter a parenting plan or residential schedule if he were determined to be the father.

Over the next three years, circumstances between the parties devolved into "one of the most atrocious examples of high conflict" the trial court had ever seen. Clerk's Papers (CP) at 227.

In August 2024, the trial court held a bench trial to determine the final parenting plan for the child. Amoroso requested primary care of LA with Johnson receiving professionally supervised visitation until she completed previously ordered domestic violence treatment. Amoroso also asked that the trial court order Johnson to submit to a psychological exam. He alleged that Johnson had multiple limiting factors including a history of domestic violence, abusive use of conflict, vexatious litigation, mental health concerns, substance abuse through alcohol, and chronic withholding of access to LA without good case. Johnson requested primary care, professionally supervised visitation exchanges, and child support.[1] She alleged that Amoroso had limiting factors through a history of domestic violence and abusive use of conflict.

At trial, it was undisputed that Amoroso had been ordered to complete a domestic violence evaluation and a chemical dependency evaluation as well as enroll in all treatment recommended by those evaluations. It was also undisputed that an incident occurred at Amoroso's parents' home in July 2019—before LA was born—which resulted in a CPS finding of neglect. Amoroso had been impaired and was playing with one of his children but not LA. The child had climbed close to Amoroso's shoulders and, while Amoroso was swinging the child around, Amoroso tripped and both he and the child fell. The child hit his back and got a bruise. Amoroso drank more alcohol,

---

[1] It appears that Johnson also requested a restraining order protecting her and LA from Amoroso and attorney fees. However, it appears that the Johnson abandoned these requests at trial as the trial court found that no party requested either at trial.

and Amoroso eventually got into an argument with another child. Amoroso got into the child's face, punched a television, and, at some point, punched a hole in a wall.

After the incident, Amoroso's wife requested a restraining order against Amoroso. And, in an unrelated case, a court made a finding that Amoroso had a history of domestic violence.

During Amoroso's case in chief in the appealed matter, Amoroso called his wife who testified to other incidents before LA's birth when Amoroso exhibited violent behavior toward her, including an instance when Amoroso grabbed a kitchen knife and pointed it at his wife's face, other instances when Amoroso punched holes in walls, and periods of controlling behavior. In a case between Amoroso and his wife, Amoroso's wife had signed a declaration describing a time when Amoroso "turned around and punched [his wife] in [her] stomach and said 'just in case'" after she told Amoroso she thought she was pregnant. 1 Rep. of Proc. (RP) at 144. Amoroso's wife testified that she overstated the situation in her declaration and asserted that Amoroso had never punched her. Amoroso's wife stated that none of Amoroso's prior violent or threatening behavior occurred when he was sober.

Amoroso also called Johnson as a witness. Direct examination of Johnson continued into the second day of trial. At the beginning of the second day of trial, the trial court asked the parties to identify their remaining witnesses due to a court administration request. Johnson's counsel responded by listing several witnesses they intended to call and stated the following about calling Johnson as a witness in their case in chief:

> I'm going to try and not readdress things on cross with my client that have already been addressed; but if the Court has questions, I will be reasonable in trying to get that done, that way I'm not going back through testimony.

1 RP at 271.

When Amoroso's direct examination of Johnson ended, the following exchange occurred:

THE COURT: All right. Do you wish to cross now or do you want to reserve for your case?
[JOHNSON'S COUNSEL]: Oh, no; I would like to cross now, Your Honor.
THE COURT: Proceed.

1 RP at 318. In total, Johnson's testimony spanned around 250 pages of the report of proceedings for the three-day trial.

At the close of Amoroso's case in chief, the following exchange occurred:

THE COURT: [Johnson's counsel], we discussed this previously. Do you have any necessary witnesses remaining?
[JOHNSON'S COUNSEL]: Well, I want to call my client on direct.
THE COURT: Okay. Besides your client?
[JOHNSON'S COUNSEL]: I don't know. I don't think so.
THE COURT: All right. How long is it going to take with Ms. Johnson? Briefly?
[JOHNSON'S COUNSEL]: No.
THE COURT: No? Okay. What is it we're going to be covering with Ms. Johnson's testimony? She was on the witness stand for about six years, by my estimation.
[JOHNSON'S COUNSEL]: Do you want me to just make an offer of proof and just tell you what I've got?
THE COURT: Yes, please.
[JOHNSON'S COUNSEL]: Okay; let's do it.
THE COURT: Let's do that.
[JOHNSON'S COUNSEL]: Okay; thank you.

2 RP at 823-24.

Johnson's counsel proceeded to describe Johnson's anticipated testimony, including testimony setting the foundation for specific exhibits. For each piece of testimony or exhibit Johnson's counsel described and requested to be admitted, the trial court "accept[ed]" or admitted the proposed testimony and exhibits as evidence. 2 RP at 824. At times, Amoroso objected to Johnson's proposed exhibits and the court appeared to overrule Amoroso's objections and admit Johnson's proposed exhibits. At one point, Johnson's counsel proposed admitting financial

documents such as Johnson's W-2s as relevant to child support. However, when the trial court questioned whether child support was an issue in the case and Amoroso replied it was not, Johnson's counsel stated, "That's fine; that's fine." 2 RP at 834. When Johnson's counsel concluded describing Johnson's anticipated testimony, counsel stated, "That is what I have." 2 RP at 835. After considering some exhibits proffered by Amoroso, the trial court delivered its decision without closing arguments.

In unchallenged findings of fact, the trial court found that "[l]imiting factors at times have afflicted both parties." CP at 189. In its oral ruling, the trial court stated:

> [B]oth of these parents in the past were in terrible shape; drinking, drugging, toxic relationship, fighting constantly, and that continued after the birth clearly, and it has continued in this case. But there is one very important thing that distinguishes these two parents, and that is that Mr. Amoroso accepted his compliance matters, accepted the fact that he had issues, embraced it and did something about it; period. He's in full compliance. He's done everything the Court has asked him to do. I make that finding. There's no question in my mind that he has done that and I'm satisfied.
>
> At this point I have no concerns about Mr. Amoroso. I have no concerns about his parenting, no aspect thereof. And I think that he has done a lot of work on himself, and it is clear to me that he has nothing but good intentions as far as [LA] goes. I'm not saying there wasn't animosity with Ms. Johnson. That's obvious. But as far as it relates—let's keep our eye on the ball. As far as it relates to the child, he is very much so concerned about doing the right thing for [LA], and that—as is the Court.
>
> I was very impressed, quite frankly, and that's the word I'll use, impressed with the work he did, turned himself around, get back in his child's life, be a great— good father, a great father to all of his kids, including this one. And he's situated now in a great situation. I mean, let's look at this, right? So he's got a stable job, stable housing. He's married. He's got other kids he's doing a great job with. They have an awesome dynamic. [Johnson] doesn't dispute that. So everything's hunky-dory in their house and the kids are doing great. They're all great students, athletes, et cetera, et cetera. I would have no qualms whatsoever about his parenting.

RP at 840-42.

In both its oral or written ruling, the trial court did not expressly find that Amoroso had a history of domestic violence nor did the court list a history of domestic violence as a "[r]eason[] for putting limitations on a parent (under RCW 26.09.191)." CP at 191 (boldface omitted). In its written findings, the only limiting factor for Amoroso the trial court noted was a limiting factor of long-term impairment due to substance abuse. For this factor, the trial court found that Amoroso had "successfully remediated this limiting factor through treatment, [Amoroso] is presently clean and sober, and no restrictions on the father are warranted." CP at 192. In other written findings, the trial court stated:

> 20.2 . . . The father accepted responsibility for his issues and has addressed them through treatment. He is in full compliance with all of the court's orders and the court has no concerns about Mr. Amoroso or his household;
>
> 20.3 The court is impressed with the work the father has done. In his testimony during trial he was forthright, credible and calm, maintaining his composure even when tension ran high in the courtroom;
>
> 20.4 The father's situation is ideal. He has a stable home, a stable job, stable marriage, and all of his other children are doing exceedingly well;

CP at 189.

Regarding Johnson, the trial court found Johnson "not similarly situated" to Amoroso in that "[s]he came to court without having done anything to address her limiting factors which the court finds are significant." CP at 189. The trial court found that Johnson had a history of domestic violence and that such was a limiting factor in the case. The trial court also found that Johnson had a limiting factor of "egregious" abusive use of conflict, including through vexatious litigation, and found that Johnson was struggling with unaddressed mental health concerns affecting her ability to parent and requiring identification and remediation. CP at 189-90.

Based on these findings, the trial court adopted Amoroso's proposed parenting plan, including limiting Johnson to professionally supervised residential time with LA. The trial court ordered Johnson to complete domestic violence treatment, submit to a full psychological evaluation with a Ph.D. provider, follow any recommendations from that evaluation, and complete a high conflict parenting seminar. The trial court also ordered that Johnson's residential time could be reviewed once Johnson achieved "substantial compliance" with her domestic violence treatment, completed the psychological evaluation, and achieved "substantial compliance" with any recommendations from that evaluation. CP at 190, 193. The trial court concluded that the parenting plan was in the best interest of LA.

The trial court reserved ruling on determining child support.

Johnson appeals.

## ANALYSIS

### I. DUE PROCESS

Johnson argues that the trial court abused its discretion and deprived Johnson of a fair trial by "[c]utting the trial short" and not allowing Johnson to testify in her case in chief. Corr. Br. of Appellant at 31. To be sure, the trial court's abbreviation of trial was inappropriate. However, because Johnson failed to preserve these arguments, Johnson must establish actual prejudice resulting from the trial court's actions. Johnson's arguments fall short and, thus, we decline to consider the merits of her arguments pursuant to RAP 2.5(a).

In general, we may decline to review any claim of error raised for the first time on appeal. RAP 2.5(a). Three exceptions to this general rule exists: "(1) lack of trial court jurisdiction, (2)

failure to establish facts upon which relief can be granted, and (3) manifest error affecting a constitutional right." RAP 2.5(a).

Johnson raises her arguments for the first time on appeal. When Amoroso rested and the trial court inquired whether Johnson had any remaining "necessary witnesses," Johnson's counsel stated that Johnson only wished to testify again, this time on direct. RP at 823-24. When the trial court asked what Johnson's additional testimony would cover, Johnson's counsel offered to "just make an offer of proof and just tell you what I've got." RP at 823-24. Johnson's counsel proceeded to describe Johnson's anticipated testimony and proposed exhibits, and, for each proffer of evidence, the trial court either "accepted" the testimony or admitted the exhibit. RP at 824-35. Johnson's counsel did not object to the process. Nowhere in the record is there indication that Johnson preserved a challenge to the court's abbreviated process of admitting Johnson's proffered testimony and exhibits.

To the extent that Johnson's claim qualifies as raising an error affecting her constitutional rights, to qualify for RAP 2.5(a)(3)'s exception, the error must be "manifest." To establish that an error was manifest, the appellant must show "actual prejudice." *State v. Kirkman*, 159 Wn.2d 918, 935, 155 P.3d 125 (2007). "'Essential to this determination is a plausible showing by the [party] that the asserted error had practical and identifiable consequences in the trial of the case.'" *Id.* (quoting *State v. WWJ Corp.*, 138 Wn.2d 595, 603, 980 P.2d 1257 (1999)).

Under the circumstances here, Johnson cannot establish actual prejudice when her counsel made a proffer for all of Johnson's anticipated testimony and proposed exhibits and the trial court accepted or admitted almost all of Johnson's proposed testimony and exhibits, even at times over Amoroso's objection. The only proposed exhibits the trial court did not admit during this proffer

were relevant to child support—an issue which the trial court ultimately reserved deciding. Johnson does not identify any practical or identifiable consequences omitting these financial documents would have had on issues that were resolved at trial, namely the parenting plan.

Johnson relies on *Baxter v. Jones*, 34 Wn. App. 1, 658 P.2d 1274 (1983) and *Smith v. Fourre*, 71 Wn. App. 304, 858 P.2d 276 (1993) to support her claimed error. But, in both cases, the appellants objected to the trial court action they argued violated their fair trial rights. *Baxter*, 34 Wn. App. at 2-4; *Smith*, 71 Wn. App. at 306.

The trial court's procedure at trial was inappropriate. However, because Johnson raises her arguments for the first time on appeal and fails to show that any constitutional error was manifest, we decline to reach the merits of her arguments here.

## II. DOMESTIC VIOLENCE LIMITING FACTOR

Johnson argues that the trial court erred by failing to find that Amoroso had a history of domestic violence. Johnson argues that this error warrants reversal because, had the trial court made such a finding, it would have had to engage in a different analysis for determining the primary residential placement of the child under RCW 26.09.187(3)(a).

Trial courts are granted "broad discretion" in making parenting plan decisions, and we only review such decisions for an abuse of discretion. *In re Marriage of French*, 32 Wn. App. 2d 308, 314, 557 P.3d 1165 (2024). The trial court abuses its discretion if it makes a decision that is "manifestly unreasonable or based on untenable grounds or reasons." *Id.* "'A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard.'" *In re Marriage of Abbess*, 23 Wn. App. 2d 479, 484, 516 P.3d 443 (2022) (quoting *In re Marriage of Horner*, 151 Wn.2d 884, 894, 93 P.3d 124 (2004)). If a decision

is factually unsupported or reached by applying an incorrect legal standard, the decision is based on untenable grounds or reasons. *French*, 32 Wn. App. 2d at 314.

When the trial court has weighed the evidence, our role is "simply to determine whether substantial evidence supports the findings of fact and, if so, whether the findings in turn support the trial court's conclusions of law." *In re Marriage of Wilson*, 165 Wn. App. 333, 340, 267 P.3d 485 (2011). "'Substantial evidence' is evidence sufficient to persuade a fair-minded person of the truth of the matter asserted." *In re Marriage of Chandola*, 180 Wn.2d 632, 642, 327 P.3d 644 (2014) (quoting *In re Marriage of Katare*, 175 Wn.2d 23, 35, 283 P.3d 546 (2012)). We do not substitute our judgment for that of the trial court, weigh evidence, or adjudge the credibility of witnesses. *Wilson*, 165 Wn. App. at 340. Additionally, we treat any unchallenged findings of fact as verities on appeal. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 808, 828 P.2d 549 (1992). Moreover, immaterial findings that do not affect the trial court's conclusions are not prejudicial and, thus, do not warrant reversal. *State v. Coleman*, 6 Wn. App. 2d 507, 516, 431 P.3d 514 (2018).

Former RCW 26.09.191 provides both mandatory and discretionary bases for limiting provisions of a parenting plan, including the residential schedule.[2] As one mandatory basis, the trial court must limit a parent's residential time with a child "if it is found that the parent has engaged in any of the following conduct: . . . (iii) a history of acts of domestic violence as defined

---

[2] The legislature recently made significant changes to this statute that went into effect on July 27, 2025. LAWS OF 2025, ch. 166, § 1. However, we review the trial court's decisions under the prior statute as it was in effect at the time of the trial court's decisions.

in RCW 7.105.010."[3]  Former RCW 26.09.191(2)(a).  The trial court can exercise its discretion to

not apply this mandatory limitation:

> If the court expressly finds based on the evidence that contact between the parent and
> the child will not cause physical, sexual, or emotional abuse or harm to the child and
> that the probability that the parent's or other person's harmful or abusive conduct will
> recur is so remote that it would not be in the child's best interests to apply the
> limitations . . . or if the court expressly finds that the parent's conduct did not have
> an impact on the child.

Former RCW 26.09.191(2)(n).[4]

The trial court also has the discretion to limit a parent's residential time if it finds that a

parent has long-term emotional or physical impairment interfering with the parent's performance

of parenting functions, abusive use of conflict including abusive litigation, a history of withholding

access to the child from the other parent without good cause, or other factors or conduct adverse to

---

[3] RCW 7.105.010 defines "[d]omestic violence" as:

> (a) Physical harm, bodily injury, assault, or the infliction of fear of physical
> harm, bodily injury, or assault; nonconsensual sexual conduct or nonconsensual
> sexual penetration; coercive control; unlawful harassment; or stalking of one intimate
> partner by another intimate partner; or

> (b) Physical harm, bodily injury, assault, or the infliction of fear of physical
> harm, bodily injury, or assault; nonconsensual sexual conduct or nonconsensual
> sexual penetration; coercive control; unlawful harassment; or stalking of one family
> or household member by another family or household member.

[4] Effective July 27, 2025:

> When mandatory limitations . . . of this section apply to both parents, the court may
> make an exception in applying mandatory limitations. The court shall make detailed
> written findings regarding the comparative risk of harm to the child posed by each
> parent, and shall explain the limitations imposed on each parent, including any
> decision not to impose restrictions on a parent or to award decision making to a parent
> who is subject to limitations.

RCW 26.09.191(7)(a).

the best interests of the child. Former RCW 26.09.191(3). Only "[w]here the limitations of RCW 26.09.191 are not dispositive of the child's residential schedule" must the trial court consider various factors set out in RCW 26.09.187(3)(a).[5] Former RCW 26.09.187(3)(a).

Here, substantial evidence supported a finding that Amoroso had a history of domestic violence based on the undisputed evidence that Amoroso had a prior finding of domestic violence, received a CPS finding of neglect, and exhibited violent and threatening behavior toward a family member. Considering this evidence, the trial court abused its discretion by failing to make a finding that Amoroso engaged in a history of domestic violence.

However, considering the trial court's other findings which are unchallenged on appeal, the error was harmless. Under former RCW 26.09.191(2)(n), the trial court had authority to not apply a mandatory limitation on Amoroso's residential time if it found that contact between the parent and the child would not cause abuse or harm to the child and that it was not in the child's best interests to apply a limitation because the probability that the parent's harmful or abusive conduct would recur is so remote or it found that the parent's conduct did not have an impact on the child. Although the trial court did not use these exact words in its written findings or its oral ruling, it appears that the trial court engaged in the required analysis when it evaluated whether exercising this discretion was warranted.

We may review a trial court's oral ruling "to complement and explain written findings." *Spencer v. Badgley Mullins Turner, PLLC*, 6 Wn. App. 2d 762, 801, 432 P.3d 821 (2018). In its oral ruling, the trial court noted both parents' concerning past behaviors, including "drinking,

---

[5] The legislature also made significant changes to this statute that went into effect on July 27, 2025. Laws of 2025, ch. 166, § 1. But we consider the prior statute as it was in effect at the time of the trial court's decisions.

drugging, toxic relationship, [and] fighting constantly." RP at 840. But the trial court distinguished Johnson's circumstances from Amoroso's by noting that Amoroso has "accepted his compliance matters, accepted the fact that he had issues, embraced it and did something about it." RP at 841. Because of Amoroso's work to address his prior issues, the trial court stated it had "no concerns" about him or his ability to parent LA. RP at 841-42.

In its written ruling, the trial court likewise found that, unlike Johnson, Amoroso had accepted responsibility for his issue and addressed them through treatment, including fully complying with court orders for evaluation and treatment. The trial court had "no concerns about [] Amoroso," was "impressed with the work" he had done, and found that Amoroso's living and working circumstances were "ideal" for LA. CP at 189. On the other hand, the trial court found that Johnson's history of domestic violence *was* a limiting factor in addition to her abusive use of conflict, vexatious litigation, and unaddressed mental health concerns.

The trial court's findings related to Amoroso indicate that, even if the trial court should have found that Amoroso had a history of domestic violence, the trial court's unchallenged findings support its decision not to impose a mandatory limitation on residential time. Former RCW 26.09.191(2)(n). Additionally, the trial court's findings regarding Johnson supported its conclusion that limitations to her residential time with LA were warranted. Former RCW 26.09.191(3). Accordingly, even if the trial court had properly found that Amoroso had a history of domestic violence, the court would not have needed to evaluate former RCW 26.09.187(3)(a)'s statutory factors because its conclusions that Amoroso's history should not limit his residential time and Johnson's findings should limit hers were "dispositive of the child's residential schedule." Former RCW 26.09.187(3)(a).

Under these circumstances, we hold that the trial court did not abuse its discretion in determining the parenting plan residential schedule.

ATTORNEY FEES

Amoroso asks this court for attorney fees on appeal. Amoroso argues an award of attorney fees is warranted because Johnson's appeal lacks merit and is merely a continuation of her abusive use of conflict.

Under RAP 18.1(a), we may award attorney fees and costs "[i]f applicable law grants to a party the right to recover reasonable attorney fees or expenses on review" before our court. RCW 26.09.140 provides that, "[u]pon any appeal, the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees . . . ." In determining whether to award attorney fees under RCW 26.09.140, we consider "'the parties' relative ability to pay' and 'the arguable merit of the issues raised on appeal.'" *In re Marriage of Muhammad,* 153 Wn.2d 795, 807, 108 P.3d 779 (2005) (quoting *In re Marriage of Leslie*, 90 Wn. App. 796, 807, 954 P.2d 330 (1998)). Accordingly, financial affidavits are required for us to consider Amoroso's request for attorney fees. RAP 18.1.

Although it appears that Amoroso has need, Johnson's financial affidavit indicates that she does not have an ability to pay Amoroso's attorney fees. Additionally, while Johnson's claim ultimately does not succeed, her arguments had arguable merit given the trial court's failure to make a domestic violence finding for Amoroso and its inappropriate procedure at trial. Under these circumstances, we decline to award Amoroso attorney fees on appeal.

No. 60301-2-II

CONCLUSION

We affirm.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

Che, J.

We concur:

Maxa, J.

Price, A.C.J.